# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ESTÉE LAUDER COSMETICS LTD. and MAKE-UP ART COSMETICS INC., ) ) ) | |
| Plaintiffs, ) ) | No. 1:19-cv-7878 |
| v. ) ) | Judge Edmond E. Chang |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Estée Lauder Cosmetics Ltd. and Make-Up Art Cosmetics Inc. have brought this trademark-infringement lawsuit against 79 online-retailer defendants.[1] R. 11, Am. Compl.;[2] R. 11-4, Am. Compl., Exh. 4 (Schedule A). (For convenience's sake, the Opinion will refer to the Plaintiffs as Estée Lauder unless otherwise noted.) The Defendants have not been served yet because Estée Lauder seeks to restrain their assets and take down the online stores. To do that, Estée Lauder has filed a motion for temporary restraining order. R. 12. In light of the dozens of defendants, the Court directed Estée Lauder to file a memorandum explaining why joinder is

---

[1]The Court has subject matter jurisdiction over the federal-law claims under 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367(a).

[2]Citations to the record are noted as "R." followed by the docket number. The Court cites to some sealed filings, but the information disclosed in this Opinion cannot be justifiably sealed under the requirements of well-established Circuit law. *Baxter Int'l v. Abbott Labs.*, 297 F.3d 544, 546-47 (7th Cir. 2002); *Union Oil v. Leavell*, 220 F.3d 562, 567-68 (7th Cir. 2000). The exceptions are the names of the retailers; those names are redacted because ultimately the Plaintiffs will be seeking asset restraints before providing notice.

proper. R. 21, 25, 26. After hearing argument from Estée Lauder on the joinder issue, the Court took the motion under advisement.[3] *See* R. 29, 12/13/19 Hearing Tr. at 2:7-11. As discussed in more detail below, the joinder of the Defendants in this case is improper under Rule 20(a)(2) of the Federal Rules of Civil Procedure. As a result, the Court reserves decision on Plaintiffs' motions for temporary restraining order and electronic service until Plaintiffs can cure the Rule 20 deficiency by filing an amended complaint narrowing down the named Defendants.

**I. Background**

As alleged by the Plaintiffs, Estée Lauder Cosmetics "is an internationally recognized manufacturer, distributor[,] and retailer of cosmetics, skincare products, and other related beauty products, all of which prominently display … federally registered trademarks, including the MAC trademarks[,]" which are at issue in this case. Am. Compl. ¶ 9. One of Estée Lauder's subsidiaries, Make-Up Art Cosmetics (hence the acronym for the trademark, "MAC"), has an exclusive license to use the 17 federally registered MAC trademarks for cosmetics and other related beauty products. *Id.* ¶¶ 6, 11-12.

Estée Lauder alleges that the Defendants operate internet stores from which they sell counterfeit MAC products to customers in the United States, including in Illinois. Am. Compl. ¶ 17. Estée Lauder has "not licensed or authorized Defendants to use any of the MAC Trademarks, and none of the Defendants are authorized retailers of genuine MAC Products." *Id.* ¶ 20. Estée Lauder also alleges that the

---

[3]The Court did grant the motions to seal in light of Estée Lauder's request for a restraint of assets. R. 28.

2

Defendants are "an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using infringing and counterfeit versions of the MAC Trademarks in the same transaction, occurrence, or series of transactions or occurrences." *Id.* ¶ 18.

## II. Analysis

### A. Joinder—General Principles

Estée Lauder bears the burden of demonstrating that joinder is proper under Federal Rule of Civil Procedure 20(a)(2). *See In re Veluchamy*, 879 F.3d 808, 819 n.4 (7th Cir. 2018) (in applying Rule 19 mandatory-joinder requirement, stating: "we confirm that in this Circuit the party advocating for joinder generally has the initial burden to establish the absent person's interest"); *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010) (explaining that complaint in prior case had been rejected because "the plaintiff had made no effort to show how his joinder of claims satisfied Rule 20"); *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009). "In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." *Desai v. ADT Sec. Servs., Inc.*, 2011 WL 2837435, at *3 (N.D. Ill. July 18, 2011) (quoting *Deskovic*, 673 F. Supp. 2d at 159). But like the standard for evaluating a complaint under Rule 12(b)(6), courts are not required to accept conclusory or speculative statements that do not qualify as assertions of *fact*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008) (explaining, for the purpose of certifying a class of plaintiffs, that "mere speculation" or "conclusory allegations" cannot support joinder).

3

*See also, e.g.*, *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1164-65 (N.D. Cal. 2011) (severing and dismissing all but one Doe defendant in part because plaintiff's allegations in support of joinder were "speculative and conclusory."), *abrogated on other grounds by Williams v. King*, 875 F.3d 500, 504-505 (9th Cir. 2017).

Under Rule 20(a)(2), defendants may be joined in a single action if two requirements are satisfied: (1) the claims against them must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2)(A)-(B). To determine whether the rights asserted arise out of the same transaction or occurrence, courts should "consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007) (cleaned up).[4]

Courts generally find that claims against different defendants arose out of the same transaction or occurrence only if there is a "logical relationship between the separate causes of action." *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012); *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994) (discussing the "same transaction or occurrence" requirement in the context of Rule 13). *See also* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1653 (3d ed. 2001); *Malibu Media,*

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*LLC v. John Does 1-6*, 291 F.R.D. 191, 201 (N.D. Ill. 2013). Claims have a logical relationship when there is a "substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *In re EMC Corp.*, 677 F.3d at 1358. In other words, "to be part of the same transaction requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts." *Id.* at 1359 (cleaned up). *See also Malibu Media*, 291 F.R.D. at 201 ("[T]he defendants' allegedly infringing acts, which give rise to the individual claims of infringements, must *share* an aggregate of operative facts." (cleaned up)); *Eclipse Mfg. Co. v. M and M Rental Center, Inc.*, 521 F. Supp. 2d 739, 744 (N.D. Ill. 2007) ("[L]anguage in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense … ." (cleaned up)); *Magnavox Co. v. APF Elecs., Inc.*, 496 F. Supp. 29, 34 (N.D. Ill. 1980) ("The complaint … is devoid of allegations concerning any connection between the television games [sold by the defendants], except that they are all alleged to infringe plaintiffs' patent. … Similarly, there is no indication … that the development[,] marketing or sales efforts involving the different products are related in any way.").

If a court finds that joinder does not comply with the Federal Rules of Civil Procedure, then the court may sever parties on its own or order the plaintiff to cure the deficiency. *See* Fed. R. Civ. P. 21; *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018). The Seventh Circuit has recognized the broad discretion that district

5

courts have in remedying misjoinder, so long as the court's decision avoids unnecessary harm to the parties. *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). *Compare Elmore*, 227 F.3d at 1011-12 (because a "suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed," and because the statute of limitations had already run, the district judge erred in dismissing a misjoined plaintiff instead of severing them) *with Watford v. LaFond*, 725 Fed. App'x 412, 413 (7th Cir. 2018) (affirming dismissal of plaintiff's suit with prejudice when plaintiff repeatedly refused to comply with order to cure Rule 20 and other deficiencies). This discretion also allows courts to consider "other relevant factors in the case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness." *Chavez*, 251 F.3d at 632 (cleaned up). Specifically, if the joinder of multiple defendants "would create prejudice, expense or delay[,]" the district court has the discretion to disallow it. *Id.* (cleaned up). In fact, in a prisoner civil rights case, the Seventh Circuit "urged district courts and defendants to beware of 'scattershot' pleading strategies[,]" warning specifically against "omnibus complaints—often brought by repeat players—that raise claims about unrelated conduct against unrelated defendants." *Mitchell v. Kallas*, 895 F.3d 492, 503 (7th Cir. 2018) (cleaned up).

### B. *Sua Sponte* Consideration

Before applying the principles governing joinder to this case, it is worth explaining why the Court is raising this issue on its own. No defendant has been

6

served in this case, so of course no motion to sever has been filed. But it is appropriate for federal courts to raise improper joinder on their own, especially when the sheer number of defendants waves a joinder red flag and ups the chances that the plaintiff should be paying separate filing fees for separate cases. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (in 24-defendant case, explaining that the district court should have questioned joinder on its own). The need for *sua sponte* evaluation also intensifies when it would take enormous time and effort to check the evidence—such as screenshots of dozens and dozens of defendants' online stores—amassed into a single case absent actual connections between the defendants. For example, in this case, the exhibits proffered to show the infringement on the online retailers' sites and to show the online orders made by Plaintiffs' investigators consume *1,355* pages. R. 16, Exh. 3. Indeed, the burden in this 79-defendant case, as heavy as it is, actually pales in comparison to many other trademark-infringement cases that have been filed in this District over the past few years. Other cases have named *hundreds* of defendants. *E.g.*, Case No. 19-cv-6529 (774 defendants); Case No. 19-cv-5668 (207 defendants); Case No. 18-cv-6555 (378 defendants). On top of the burden of evaluating enormous evidentiary submissions for the *liability* stage of the case, the Court must again examine the mountain of exhibits in order to make a rational assessment of statutory *damages*. For example, an online store that shows thousands of reviews for a counterfeit product probably sold much more of that product than an online store with zero reviews for it, and the more prolific seller should be tagged with a larger damages award. But that kind of rational, evidence-based assessment of

7

statutory damages would consume an enormous amount of time if it had to be done for dozens of defendants in a single case. So the court system does have an independent interest in assuring that joinder is properly alleged in this type of case, even absent a motion by a defendant.

### C. Joinder—Trademark Infringement

Moving on to the merits of the joinder question, time and again the courts of this District have held that it is not enough for a plaintiff to simply allege that multiple defendants have infringed the same patent or trademark to meet Rule 20's requirements. *See, e.g.*, *ThermaPure, Inc. v. Temp-Air, Inc.*, 2010 WL 5419090, at *4 (N.D. Ill. Dec. 22, 2010) ("Rule 20(a)'s requirement for a common transaction or occurrence is not satisfied where multiple defendants are merely alleged to have infringed the same patent or trademark."). *See also Slep-Tone Entm't Corp. v. Roberto*, 2013 WL 5748896, at *2-3 (N.D. Ill. Oct. 22, 2013); *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010); *SB Designs v. Reebok Int'l, Ltd.*, 305 F. Supp. 2d 888, 892 (N.D. Ill. 2004); *Magnavox Co.*, 496 F. Supp. at 34. That makes sense: one defendant's alleged infringement does not "arise out of the same transaction, occurrence, or series of transactions of occurrences" as another defendant's unrelated infringement. Fed. R. Civ. P. 20(a)(2)(A). When defendants are not connected to one another, there is no evidentiary overlap in proving what one defendant did and what another did. Or, when viewed from the defense perspective, there is nothing that one defendant could advance in defending a case that would be dependent on an unrelated codefendant.

8

So a blunderbuss theory of joinder would require each trademark-infringement defendant to monitor the docket and the filings pertaining to dozens or hundreds of co-defendants.

This is similar to the line of cases holding that patent- and copyright-infringement defendants cannot be roped together into one complaint when there is no connection between them. When the Federal Circuit considered the question of permissive joinder in a patent-infringement case, it emphasized that "[t]he sameness of the accused products is not enough to establish that claims of infringement arise from the 'same transaction.'" *In re EMC Corp.*, 677 F.3d at 1359. The Federal Circuit went on to explain that "[u]nless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.*

That rationale applies just as well to copyright-infringement cases. Specifically, the issue of joinder has arisen in BitTorrent internet piracy cases, where copyright owners have sued internet users participating in the same "swarm"—that is, a group of users downloading and sending smaller pieces of a single file from and to each other, allowing for faster download speeds and reducing internet traffic (as opposed to "normal" downloading, when a user downloads an entire file from a single source). *See, e.g.*, *AF Holdings, LLC v. Does 1-1508*, 752 F.3d 990, 998 (D.C. Cir. 2014). In *AF Holdings*, the D.C. Circuit considered whether the joinder of more than one *thousand* BitTorrent users was permissible. *Id.* at 992, 997-98. The copyright owner

argued that BitTorrent users who participate in the same "swarm" can be properly joined because they were all part of the same series of transactions. *Id.* at 998. The D.C. Circuit disagreed. Although it recognized that "two individuals who participate in the same swarm *at the same time* are part of the same series of transactions"—because they may be inferred to have been actively sharing a file with each other—the court declined to permit the joinder of *all* individuals who participate in a single swarm. *Id.* The court analogized that two individuals who download the same file at separate times are "like two individuals who play at the same blackjack table at different times. They may have won the same amount of money, employed the same strategy, and perhaps even played with the same dealer, but they have still engaged in entirely separate transactions." *Id.* "[C]ommitting the same type of violation in the same way does not link defendants together for the purpose of joinder." *Id.* (cleaned up). In other words, four individuals who participated in the same swarm to pirate the same film at the same time could be properly joined with *each other*, but it would be improper to join them with *other* individuals who participated in that same swarm but at different times. *See also reFX Audio Software Inc. v. Does 1-85*, 2014 WL 1293816, at *5-6 (N.D. Ill. March 24, 2014) (holding that only BitTorrent users who directly exchange with one another are properly joined).

With these background principles in mind, Estée Lauder argues that the Defendants are "an interrelated group of counterfeiters acting in active concert" who "share unique identifiers, such as design elements, similarities of the price, description of the goods offered for sale, and of the Counterfeit MAC Products

10

themselves offered for sale." R. 21, Pls.' Joinder Mem. at 6, 8. But those are conclusions—not facts. An examination of the facts reveals that there is insufficient similarity between the Defendants, and certainly not as to *all* of the Defendants.

First, not all of the Defendants use the same product images and product descriptions. On the one hand, Defendants Numbers 6, 13, 18, 19, and 20—that is, sellers ███████, ███████████, ████████████, ██████████, and ████████████ on ████████—do appear to have identical product descriptions and sample images. R. 22, 12/10/19 Gaudio Decl. No. 2 ¶ 4; R. 22-2, 12/10/19 Gaudio Decl. No. 2, Exh. 2 at 2-15; Am. Compl., Exh. 4 (Schedule A) at 1. But Defendants Numbers 23, 27, and 28—sellers ████████████, ███████, and ████████████—use product images and descriptions that are completely different. 12/10/19 Gaudio Decl. No. 2 ¶ 6; R. 22-4, 12/10/19 Gaudio Decl. No. 2, Exh. 4 at 2-16; Am. Compl., Exh. 4 (Schedule A) at 1. What's more, some of the images and descriptions, even if similar to one another, are so generic that no inference of a connection between those defendants can be drawn. *See In re EMC Corp.*, 677 F.3d at 1359. *See also, e.g.*, *Rudd v. Lux Products Corp.*, 2011 WL 148052, at \*3 (N.D. Ill. Jan. 12, 2011) ("Simply alleging that Defendants manufacture or sell similar products does not support joinder under Rule 20."). Considering that the Defendants are copying the Estée Lauder products, it is not a surprise that the counterfeited end-results—along with their images and descriptions—would be similar.[5] It is true that, in other trademark-infringement cases, this Court has relied

---

[5]In any event, it is worth noting that not all of the Defendants are selling the same counterfeit MAC products (at least insofar as the exhibits show): for example, although some

11

on unique images, unique word and sentence construction, or the same misspellings or grammar mistakes to infer that the subset of online retailers using those same images or those same descriptions are connected to one another. But that is not nearly true of *all* the Defendants in this case.

Next, Estée Lauder alleges that the Defendants' counterfeit products are similarly priced. But that is not right. For example, although the counterfeit MAC products sold by Defendants Numbers 6, 13, 18, 19, and 20 range from $0.94 to $1.24, *see* 12/10/19 Gaudio Decl. No. 2, Exh. 2 at 2, 5, 8, 10, 13, other Defendants have listed the counterfeit products for $5 and even for free (instead charging for shipping), *see* R. 22-3, 12/10/19 Gaudio Decl. No. 2., Exh. 3 at 3, 5. Estée Lauder has made assertions of similarity that are much too broad and that are not supported by the evidence. In light of the factual disparities between the Defendants, joinder of *all* 79 online retailers is improper. There is no way that "substantially the same evidence," *In re EMC Corp.*, 677 F.3d at 1359, will be used to support or to refute Estée Lauder's claims against these dozens of Defendants.

Aside from the purported similarities between the online retailers, Estée Lauder makes a broader argument to contend that the Defendants are related to one another. Specifically, Estée Lauder alleges that, after a first wave of infringement lawsuits and injunctions, online retailers removed the MAC trademarks from product titles and images. To Estée Lauder's way of thinking, that establishes a

---

of the retailers are selling counterfeit liquid eyeliners, others are selling retractable pencil liners. *Compare, e.g.*, R. 32-1, Pls.' Second Supp. on Joinder, Exh. 1, at Defs. Nos. 5, 21 (listing a "Liquid Eye Liner Pen" product) with *id.* at Defs. Nos. 29, 39, 42 (listing a retractable eyeliner pencil).

connection between the Defendants. *See* R. 26, Pls.' First Supp. on Joinder at 2; R. 32, Pls.' Second Supp. on Joinder at 3-4; 12/13/19 Hearing Tr. at 4:8-7:12. But inferring *coordination* puts too much stock on the bare fact that the MAC trademarks were removed.[6] It is just as likely that *each* online retailer decided to avoid being shut down yet again by removing the trademarks.[7] And once again contrary to Estée Lauder's representations, some of the Defendants *do* still display the MAC trademarks in their product images. *Compare, e.g.,* R. 16-1, Heiss Decl., Exh. 3 (Part 1) at 5, 22 *with* R. 26-1, 12/12/19 Gaudio Decl. ¶ 3. *See also, e.g.*, *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 497 (D.N.J. 1998) (holding that a "conclusory allegation" that the defendants were part of a "strategic umbrella [of] collusion" was insufficient to justify joinder). The purported response to other infringement cases does not supply the connection required here.

In the most recent supplemental brief in support of joinder, Estée Lauder cites a few more cases. Pls.' Second Supp. on Joinder at 2 (citing *United States v. Mississippi*, 380 U.S. 128, 142 (1965); *Civil Aeronautics Bd. v. Carefree Travel, Inc.*, 513 F.2d 375, 384 (2d Cir. 1975); *Mosely v. General Motors Corp.*, 497 F.2d 1330, 1333

---

[6]It is worth noting that coordination between all defendants is not a necessary element of joinder; there are other ways to satisfy the requirements of Rule 20, and to do so by relying on circumstantial evidence. But the evidence here, even generously viewed in Estée Lauder's favor, falls far short of showing that the claims against all of the Defendants arise from the same transaction or occurrence.

[7]Also, to the extent that some of the online retailers have removed the MAC trademarks from the product images and product descriptions, it is not clear why the Plaintiffs would have a winning trademark-infringement claim. If some of the Defendants are not even displaying the trademark, then that is exactly the kind of legal and factual inquiry that is exceptionally burdensome when the Court must scrutinize 1,355 pages of exhibits to assess the likelihood of success on trademark infringement.

(8th Cir. 1974); *City of New York v. Joseph L. Balkan, Inc.*, 656 F. Supp. 536, 549 (E.D.N.Y. 1987)). But none of those cases involved anything *remotely* close to 79 defendants, and those cases involved a closer factual connection between the defendants. For example, in a voting-rights case against *six* counties in *one* State, it was reasonable to infer that the claims against the counties arose from the same series of transactions or occurrences, because the counties allegedly had acted "as part of a *state-wide* system designed to enforce the registration laws in a way that would inevitable deprive … people of the right to vote solely because of their color." *Mississippi*, 380 U.S. at 142-43 (emphasis added). In other words, the counties were implementing a *single* state-wide system. In contrast, the sheer number of Defendants here and the factual disparities among their conduct undermines both the inference that they are acting together *and* that substantially the same evidence applies to all 79 of them.[8]

Lastly, Estée Lauder argues that "joinder at this stage also serves the important interests of convenience and judicial economy, leading to a just, speedy, and inexpensive resolution for Plaintiffs, Defendants[,] and this Court." Pls.' Joinder

---

[8]The other cases cited by Estée Lauder are distinguishable for similar reasons. *See Civil Aeronautics Bd. v. Carefree Travel, Inc.*, 513 F.2d 375, 384 (2d Cir. 1975) (no misjoinder where the two groups of defendants—consisting of only 9 total defendants, 5 of which were individuals acting for the other 4 corporation-defendants—were all represented by the same counsel and all engaged in the same "black market" operation of affinity charters); *Mosely v. General Motors Corp.*, 497 F.2d 1330, 1333-34 (8th Cir. 1974) (joinder was proper where each of the 10 plaintiffs was allegedly injured by the same "company-wide policy" and faced the same discriminatory threat); *City of New York v. Joseph L. Balkan, Inc.*, 656 F. Supp. 536, 549 (E.D.N.Y. 1987) (joinder was proper—even if the defendant contractors engaged in separate transactions—because the transactions were all with City sewer inspectors and related to a systematic corruption of the Bureau of Sewers).

14

Mem. at 9. It is true that cases like this one—that is, trademark-infringement cases against online retailers, especially foreign retailers—have often resulted in default judgments. But presenting dozens or hundreds of defendants in one lawsuit actually undermines judicial economy, because this Court must evaluate the evidence submitted in support of liability and, eventually, damages. That is especially true in the *ex parte* setting of a temporary restraining order, as well as for default-judgment motions. It is much more of a burden to satisfy that duty when there are dozens or hundreds of online retailers named in one case. *Cf. Purzel Video GMBH v. Does 1-91*, 2013 WL 4775919, at *2 (E.D. Mo. Sept. 6, 2013) ("Rule 20(a)'s purpose of promoting judicial economy and trial convenience would not be served by allowing the number of defendants in this case because the ensuing discovery and variety of defenses could prove unwieldy for a single case"); *see also id.* (severing and dismissing "all but one Doe Defendant to avoid causing prejudice and unfairness to Defendants, and in the interest of justice").

### III. Conclusion

For the reasons discussed above, the joinder of the Defendants in this case is improper under Rule 20(a)(2). The Plaintiffs have until February 10, 2020 to file an amended complaint narrowing the claims down to a subset of Defendants who are properly joined. Any amended complaint must be accompanied by a memorandum explaining specifically why *each* Defendant is properly joined to *all* of the others.

Until then, the Court reserves decision on the motion for temporary restraining order.

The status hearing of February 11, 2020 is reset to February 13, 2020, at 10:30 a.m.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: January 27, 2020